UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

CARLENE A. PANARO,

                    Plaintiff,

        -vs-                         **No. 1:14-CV-00777 (MAT)**
                                     **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

───────────────────────────────

## I.   Introduction

        Represented by counsel, Carlene A. Panaro ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II.  Procedural History

        This case has a long history. Plaintiff (d/o/b February 1, 1966) originally filed for DIB on April 22, 2002, alleging disability as of January 2, 2001. After initial denial and a hearing, Administrative Law Judge ("ALJ") Robert T. Harvey issued an unfavorable decision on March 16, 2005. The Appeals Council granted plaintiff's request for review of that decision, and by

order dated September 25, 2006, remanded the case with various instructions. While that appeal was pending, plaintiff filed a second application for DIB dated July 3, 2006. The Appeals Council's September 25, 2006 order directed that plaintiff's two claims be consolidated as duplicative. However, on February 23, 2007, the state agency determined that plaintiff had been disabled since May 17, 2005, but that she was not disabled prior to that date.[1]

Subsequent to the Appeals Council's May 25, 2006 remand order, a second hearing was held before ALJ Harvey on December 2, 2008. In a decision dated February 4, 2009, in which ALJ Harvey addressed both of plaintiff's consolidated claims, he determined that she had not been under a disability at any point relevant to his determination. The Appeals Council again granted review, and on July 19, 2011 again remanded the case with various instructions.

Pursuant to that remand order, a hearing was held by ALJ William M. Weir on June 1, 2012. On September 17, 2013, ALJ Weir issued a decision which found that plaintiff was not under a disability from January 2, 2001 (her original alleged onset date) through May 16, 2005. In so finding, the ALJ did not disturb the February 23, 2007 decision of the state agency, which had found plaintiff disabled as of May 17, 2005. Thus, the relevant time

---

[1] The ALJ in the decision at issue here found that this determination was made without jurisdiction because the Appeals Council had already held that plaintiff's two applications should be consolidated. However, the ALJ noted that the determination was not subject to reopening.

period under review in this proceeding is the time period from January 2, 2001 through May 16, 2005.

## III. Summary of the Relevant Evidence

### A.   Physical Impairments

Plaintiff last worked as a cafeteria manager for the Buffalo City Schools, until she suffered an on-the-job back injury on January 2, 2001. As a result of that injury, she was diagnosed with moderate to large posterolateral disc protrusion which affected the nerve root and caused moderate neuroforaminal origin stenosis. Plaintiff also had a history of left knee surgeries, and reported exacerbation of knee pain with her new injury. After several months of treatment including physical therapy, plaintiff underwent left L5-S1 microdiscectomy surgery on May 2, 2001. Postoperative MRI showed normal postoperative changes at L5-S1, with no recurrent disc herniation. After several postoperative visits in which plaintiff showed improvement, plaintiff's treating physician, Dr. Douglas Moreland, concluded in November 2001 that she had "some myofascial pain and inflammation," and that "her psychological state may be effecting her as well here." T. 238. Throughout her postoperative treatment, she was prescribed narcotic pain medication.

Plaintiff was referred to Dr. Eugene Gosy for pain management therapy due to her ongoing subjective complaints of pain. Dr. Gosy noted that plaintiff had been hospitalized for alcohol abuse in

December 2001, "secondary to pain." T. 270. On examination in January 2002, Dr. Gosy diagnosed plaintiff with fibromyalgia, noting findings of a normal physical examination. Dr. Gosy prescribed muscle relaxants in addition to plaintiff's psychiatric medication, while noting continued normal physical examinations and finding that plaintiff was neurologically unimpaired. That same month, Dr. Moreland attested that plaintiff could return to work "without any restrictions." T. 840.

In September 2002, Dr. Samuel Balderman performed a consulting physical exam at the request of the state agency. Plaintiff reported having an alcohol relapse the prior month. Plaintiff's physical examination was unremarkable. Dr. Balderman opined that plaintiff had mild limitations in bending and lifting, due to her history of back surgery, stating that her "major limitations [were] related to her battles with alcoholism and depression." T. 280.

From February through December 2004, plaintiff treated with an acupuncturist and continued to complain of low back and knee pain. In May 2004, orthopedic spine surgeon Dr. Andrew Cappuccino found an essentially normal physical examination, but noted plaintiff's complaints of pain. Dr. Cappuccino diagnosed post laminectomy syndrome with discogenic and discopathic mechanical low back pain.

In January 2005, Dr. Taj Jiva conducted a consulting orthopedic examination at the request of the state agency. X-rays

performed in connection with that exam showed mild narrowing of the disc space at L2-L3 with tiny anterior osteophytes and slight narrowing of the disc space at L5-S1. Plaintiff's knee showed mild degenerative changes involving the lateral aspect of the joint. On physical examination, plaintiff appeared to be in no acute distress, "but claimed to have generalized body aches and pain with intensity of 9 out of 10." T. 1054. She did not need help changing for the exam, used no assistive devices, was able to rise from the chair without difficulty, and needed no help getting on or off the exam table. Plaintiff exhibited limited range of motion of the spine and lower extremities; however, her physical exam was otherwise normal, with full strength of all extremities, negative straight leg raise ("SLR"), and no muscle atrophy, sensory abnormality, joint effusion, inflammation, or instability. Dr. Jiva opined that plaintiff was "moderately limited for walking, standing, climbing, lifting, squatting, and bending," secondary to her low back spasm, fibromyalgia, and myofascial pain.

At plaintiff's most recent hearing, Dr. Donald Goldman, an orthopedic surgeon, testified that he had reviewed the entire medical record, which consists of 49 exhibits totaling over 1100 pages. Dr. Goldman was questioned by the ALJ and plaintiff's counsel at the hearing, and he also asked plaintiff questions about her symptoms during the relevant time frame. Ultimately, Dr. Goldman opined that, based on all of the information he had

reviewed including the plaintiff's responses, he would consider her to have disabling limitations during a postoperative healing period of approximately six months, "at the outmost," following her May 2001 discectomy. T. 1633-34. Dr. Goldman opined that after that period, plaintiff would not have any significant physical limitations. According to Dr. Goldman, if plaintiff did have such physical limitations, there would have been more significant objective medical findings to substantiate those limitations.

   **B.   Mental Impairments**

   Plaintiff's mental health treatment history reflects diagnoses of alcohol-induced mood disorder, depression, and anxiety. Plaintiff treated with psychiatrist Dr. Michael Hallett beginning in December 2001. On initial examination, plaintiff was visibly intoxicated, could not walk without assistance, and reported drinking excessively (approximately two quarts of whiskey per week) in addition to taking prescribed medication. Plaintiff's regular treatment with Dr. Hallett from approximately November 2002 through April 2005[2] revealed regular unremarkable mental status examinations, with the exception of occasional notations of depressed mood and psychomotor retardation.

   In late December 2001, plaintiff was involuntarily admitted to Erie County Medical Center ("ECMC") due to an episode of

---

   [2] Plaintiff continued to treat with Dr. Hallett beyond these dates; however, those treatment notes do not relate to the time period at issue in this case.

intoxication in which she exhibited an "agitative and combative state." T. 370. Upon discharge, it was noted that plaintiff "did not appear to have a primary mood disorder," but she was encouraged to follow up with alcohol abuse treatment. Id.

In August 2002, plaintiff underwent a psychiatric evaluation by Dr. Michael Lynch, in connection with a workers compensation claim. Dr. Lynch diagnosed adjustment disorder, but found that "[f]rom a psychiatric point of view, [plaintiff had] no restrictions or limitations." T. 686. Plaintiff was hospitalized again on August 29-30, 2002, for symptoms associated with alcohol-induced mood disorder. She was referred to outpatient treatment, which she began in September 2002 at Sisters Healthcare Dependent Services Star Program ("SHDS"). The record indicates that this treatment was also administered in connection with a drug court program related to a charge of driving while intoxicated. Mental status examination on September 10, 2002 was unremarkable, except that plaintiff exhibited depressed and anxious affect. Treatment notes from SHDS reflected participation in individual and group therapy, with goals of abstinence, but multiple relapses, noted.

In September 2002, Dr. Thomas Dickinson performed a psychiatric evaluation at the request of the state agency. Dr. Dickinson diagnosed alcohol dependency, continuous; anxiety disorder, not otherwise specified ("NOS"); and depressive disorder, NOS. He opined that plaintiff had "overall functioning in the

7

average range," and could follow and understand simple instructions, maintain attention and make appropriate job decisions, learn new assignments, and remember job duties. T. 276. Dr. Dickinson found that plaintiff would have "some trouble" performing tasks in a reliable and consistent manner, performing complex tasks in an independent manner, and dealing with quick decisions. Id. According to Dr. Dickinson, she would have "mild difficulty" relating to co-workers, supervisors, and customers, and "[d]istractions and stress situations would be mildly difficult." Id. In October 2002, state agency psychiatrist Dr. George Burnett reviewed plaintiff's file and determined that she was able to perform simple, repetitive tasks in a low-contact environment.

In September 2003, Dr. Ralph Benedict and Dr. Lynch examined plaintiff in connection with her workers compensation case. Both doctors concluded that plaintiff did not have psychiatric restrictions. Both doctors noted doubts about plaintiff's veracity, noting inconsistencies between plaintiff's subjective complaints of pain and her appearance, clinical examinations, and reports of daily activities. Dr. Lynch went so far as to state that plaintiff was "malingering many of her symptoms," noting that she reported no financial need and when asked about a return to work, plaintiff flatly stated, "It's not going to happen." T. 654.

In January 2005, Dr. Thomas Ryan examined plaintiff at the request of the state agency. He concluded that she could follow and

understand simple instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform some complex tasks independently, make adequate decisions, relate with others, and had no difficulty dealing with stress.

## IV.  ALJ Weir's September 17, 2013 Decision

ALJ Weir ("the ALJ") followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2008. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 2, 2001, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: alcohol-induced mood disorder, major depressive disorder, anxiety disorder, and alcohol abuse disorder. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments including those stemming from substance abuse disorder, plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but was limited to only occasional contact with

co-workers, the public, and supervisors, and, due to alcohol abuse, had occasional limitations in the ability to perform certain activities within a schedule, maintain regular attendance, be punctual within customary tolerance, and complete a normal workday and workweek. The ALJ determined, while abusing alcohol, plaintiff was unable to perform any past relevant work. He then found, at step four, that considering plaintiff's age, work experience, and RFC based on all of her impairments including those relating to substance abuse, there were no jobs in the national economy which she could perform.

The ALJ went on to consider plaintiff's limitations in light of the drug addiction or alcoholism standards set forth in 20 C.F.R. § 404.1535. The ALJ found that if plaintiff stopped substance abuse during the relevant time frame, she would not have had an impairment or combination of impairments that met or medically equaled a listing. The ALJ found that if she stopped substance abuse, she would have retained the RFC to perform a full range of work at all exertional levels, but with only occasional interaction with co-workers, the public, and supervisors. After finding that she would still be unable to perform past relevant work, the ALJ made the step-five determination that, if she stopped substance abuse, there were a significant number of jobs in the national economy that she could have performed during the relevant period. Finally, as noted above, the ALJ found that plaintiff was

not disabled for the time period from January 2, 2001 through May 16, 2005.

## V.   Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   Severity of Plaintiff's Physical Impairments

Plaintiff contends that the ALJ committed reversible error in finding that plaintiff had no severe physical impairments. As discussed above, the ALJ found that plaintiff's only severe impairments were mental in nature. In considering which of plaintiff's impairments were severe, the ALJ engaged in a thorough consideration of the evidence of plaintiff's impairments, both physical and mental. His decision reflects a reasoned analysis as to why plaintiff's physical impairments were not severe, i.e., did not impose more than minimal limitations on plaintiff's daily functioning. In arriving at this conclusion, the ALJ relied on repeated findings of normal physical examinations, as well as Dr. Goldman's hearing testimony that plaintiff's back and knee pain

would not have resulted in limitations beyond six months after her discectomy.

The ALJ's analysis was supported by substantial evidence in the record. It is clear that the ALJ fully reviewed the record both as to plaintiff's physical, and mental, impairments. He simply found that, based on the evidence, she did not have significant physical limitations during the relevant time frame. Even if the ALJ erred in finding plaintiff's physical impairments technically non-severe, the record amply supports his finding that she would have no physical restrictions after her recovery from surgery. "As a general matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless . . . when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process." Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (internal quotation marks and citations omitted). Therefore, any error at step two under these circumstances was harmless.

**B.  Weight Given to Medical Source Opinions**

Plaintiff next argues that the ALJ failed to properly weigh the medical source opinions. Specifically, plaintiff contends that the ALJ erred in failing to give controlling weight to the opinions of treating sources Drs. Gosy and Hallett. Dr. Hallett's opinion, completed in November 2008 and stating, in the heading, that it

pertained to the time period "January 2, 2001 and continuing," opined that plaintiff had poor to no ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, understand and remember complex job instructions, relate predictably in social situations, and behave in a stable manner. T. 1520.

The ALJ gave Dr. Hallett's opinion significant weight as "a generally accurate indicator of the claimant's work-related mental functioning when her alcohol abuse and alcohol-induced mood disorder are considered." T. 33. Otherwise, the ALJ did not give controlling weight to the opinion, citing Dr. Hallett's ample treatment notes, which consistently reflected normal status examinations when plaintiff was not under the influence of alcohol, as well as consulting opinions from Drs. Ryan, Dickinson, and Lynch. The ALJ noted that he gave little weight to Dr. Hallett's conclusion that alcoholism was not a contributing factor to plaintiff's work-related mental limitations.

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2). However, "[w]hen other

13

substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And *the less consistent that opinion is with the record as a whole, the less weight it will be given.*" Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (emphasis added) (citing 20 C.F.R. § 404.1527(d)(4)).

The ALJ's decision not to give controlling weight to Dr. Hallett's November 2008 opinion was supported by substantial evidence. First, even though the opinion states that it relates to the time period prior to 2001, Dr. Hallett's treatment notes during the time frame prior to May 17, 2005 consistently indicate normal mental status examinations over approximately monthly treatment during a four-year time frame. Second, multiple opinions from three different consulting sources found that plaintiff had no significant mental limitations. These sources found that plaintiff would have, at most, mild limitations performing complex tasks and dealing with supervisors, co-workers, or the public.

Substantial evidence also supported the ALJ's decision to afford little weight to Dr. Hallett's opinion that alcoholism was not a contributing factor to plaintiff's limitations. The record reflects that, when under the influence of alcohol, plaintiff's condition deteriorated to a point where she was essentially nonfunctional and required hospitalization on multiple occasions. However, when plaintiff reported abstinence and attended regular

mental health treatment, her mental status was consistently normal
with the exception of occasional depressed mood and psychomotor
retardation. For all of these reasons, the Court concludes that the
ALJ properly applied the treating physician rule to Dr. Hallett's
opinion.

Plaintiff also points to Dr. Gosy's November 2008 opinion as
to plaintiff's physical limitations, which opinion also stated that
it related to the period beginning "January 2, 2001 and
continuing." T. 1523. Dr. Gosy opined that plaintiff could: lift
only three to five pounds, and rarely; walk for two hours in an
eight-hour workday and walk for only 10 minutes at a time without
interruption; sit for less than two hours in an in an eight-hour
workday and sit for 20 to 30 minutes at a time without
interruption; never climb, crouch, kneel, or crawl; never reach or
push/pull; and needed a cane for ambulation. The ALJ rejected this
opinion, finding that, despite its heading, it clearly pertained to
the time period of July 2005 and after.

The record reveals that, in July 2005, plaintiff returned to
Dr. Gosy for treatment after a gap in treatment of approximately
two years. Dr. Gosy's treatment after that date reflected that
plaintiff had an antalgic gait and required a cane to ambulate.
However, as discussed above, during the time period relevant to
this case, Dr. Gosy stated that plaintiff was neurologically
unimpaired and made no objective findings to support her subjective

complaints of pain. In her hearing, plaintiff also testified that did not start using a cane for ambulation until 2005. Thus, substantial evidence supports the ALJ's decision to give little weight to Dr. Gosy's opinion, because despite its notation that it pertained to the time period from January 2001 and continuing, Dr. Gosy's treatment notes support the opinion only from July 2005 forward.

The ALJ was entitled to rely on the consulting opinion of Dr. Goldman, who testified unequivocally that, following plaintiff's discectomy surgery, and based on her subsequent examinations during the relevant time frame, she would not have had any significant physical limitations extending beyond six months postoperatively. See, e.g., Younes v. Colvin, 2015 WL 1524417, *5 (N.D.N.Y. Apr. 2, 2015) ("Consultative opinions can be afforded even greater weight than treating-source opinions when there is good reason to reject treating source opinion, and substantial evidence supports them.") (citing SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.")). For all of these reasons, the Court concludes that the ALJ properly applied the treating physician rule to Dr. Gosy's opinion.

16

## C.  Credibility

Plaintiff contends that the ALJ erroneously assessed her credibility. The ALJ's credibility assessment, however, reflects a thorough review of the record, including the objective medical evidence as well as plaintiff's subjective complaints regarding her symptoms.  The ALJ's discussion reflects a proper application of the two-step credibility process laid out in the regulations, see 20 C.F.R. § 404.1529, and cites other relevant authorities. T. 37 (citing 20 C.F.R. § 1527, SSRs 96-4p, 96-5p, 96-6p, 96-7p, 06-3p); see Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). The ALJ's discussion demonstrates that, although he did not explicitly address every factor laid out in the regulations, he properly applied the rule, his reasoning is readily discernible, and his decision was supported by substantial evidence. See Judelsohn v. Astrue, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record.").

### D.    Consideration of Impairments in Combination

Plaintiff next argues that the ALJ erred in failing to consider all of her impairments in combination. As the Commissioner points out, this argument is a reiteration of plaintiff's earlier arguments that (1) the ALJ did not properly consider limitations stemming from her physical impairments; and (2) the ALJ failed to consider all of her impairments due to an improper credibility determination. The Court has already decided that the ALJ properly considered plaintiff's physical impairments and properly determined her credibility. Accordingly, this argument is rejected.

### E.    Vocational Expert Testimony

Plaintiff contends that the ALJ erroneously relied on vocational expert ("VE") testimony which was "based on hypotheticals that omitted [plaintiff's] limitations." Doc. 10 at 42. This argument essentially contends that the ALJ improperly determined plaintiff's RFC. However, the ALJ's decision reflects a thorough consideration of the entire record, which included plaintiff's medical record and her own testimony, the testimony of a medical expert, and the testimony of the VE. The Court has already found that substantial evidence supported the ALJ's conclusion that plaintiff did not suffer from physical limitations during the relevant time frame. As to plaintiff's mental impairments, the Court concludes that the ALJ properly considered those as well. The ALJ found that absent alcohol abuse, plaintiff

was limited to only occasional interaction with co-workers, the public, and supervisors. This limitation was supported by the record. The consulting psychiatric examinations in the record, combined with Dr. Hallett's ample treatment notes showing unremarkable mental status examinations over the four-year relevant period, support the ALJ's finding in that regard. The ALJ's specific application of the alcohol and drug abuse standards is addressed below.

### F.   Consideration of Alcohol or Drug Abuse

Finally, plaintiff contends that the ALJ erred in finding that alcohol abuse was a contributing factor material to her disability. In assessing the impact of drug addiction or alcoholism on a disability claim, the ALJ must first determine whether the claimant is disabled. See 20 C .F.R. § 416.935(a). The ALJ must reach this determination initially using the standard five-step approach described above without segregating out any effects that might be due to substance abuse disorders. If the inquiry suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the alcohol addiction are absent. If, in following the five-step sequential analysis, the claimant would still not be disabled considering the remaining limitations, then alcohol or drug addiction is a contributing factor material to the determination of disability and the individual is not considered disabled for the purposes of the Act. See 20 C.F.R.

§ 416.935(b)(2). If the record shows substance abuse, "it is the claimant's burden [to] prove that substance abuse is not a contributing factor material to the disability determination." Badgley v. Astrue, 2009 WL 899432, at *4 (W.D.N.Y. Mar. 27, 2009).

The ALJ followed that procedure in this case. His decision, which concluded that alcoholism was a contributing factor material to her disability, was well-supported by substantial evidence. Medical evidence from both plaintiff's treating and consulting doctors supports the conclusion. Plaintiff's initial treatment with Dr. Hallett, in December 2001, occurred when she was under the influence of alcohol. At that time, plaintiff was so intoxicated that she was unable to ambulate without assistance. She reported drinking excessively in addition to taking prescribed narcotic pain medication. Upon discharge from hospitalization later that month, she was assessed with no primary mood disorder.

As the Commissioner points out, the consulting examinations of Drs. Dickinson and Ryan also support the ALJ's conclusion regarding alcoholism. In September 2002, Dr. Dickson assessed a normal mental status, but, noting plaintiff's report that she had been drinking despite knowing she was not supposed to, indicated that if she could not return to work she should be referred to vocational rehabilitation "when matters [were] more stable." T. 276. However, even at that time, he assessed no significant mental limitations. In January 2005, Dr. Ryan examined plaintiff when she was

apparently sober, and concluded that she had no psychiatric limitations. Dr. Lynch's findings also support the ALJ's determination; although he diagnosed plaintiff with adjustment disorder, he opined in August 2002 and 2003 that plaintiff had no psychiatric limitations.

The Court notes that "the question is not whether [p]laintiff was more severely limited when she was engaged in substance abuse, but rather whether she continues to meet the definition of disability during sobriety." Kinner v. Comm'r of Soc. Sec., 2010 WL 653703, *6 (N.D.N.Y. Feb. 19, 2010). In this case, as described above, the bulk of plaintiff's treatment notes with Dr. Hallett indicate that she had a consistently normal mental status over the four-year time period relevant to this claim. The record (including treating and consulting reports) reflects that during that time period, when she was not abusing alcohol, she did not suffer any significant mental limitations. Thus, the ALJ correctly found that alcoholism was a contributing factor to her disability. Plaintiff has failed to meet her burden of establishing that her alcoholism, which is well-established in the record, was not a contributing factor to disability during the relevant time period. Accordingly, the ALJ's finding will not be disturbed.

## VI.  Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 9) is denied and the Commissioner's motion

(Doc. 11) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:      January 26, 2016
            Rochester, New York.